UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO, EASTERN DIVISION

| | | |
|---|---|---|
| **WELLS FARGO BANK, N.A.,** | ) | |
| | ) | Case No. 4:15-cv-00239 |
| Plaintiff, | ) | |
| | ) | Judge Pearson |
| vs. | ) | |
| | ) | |
| **ALLSTATE INSURANCE COMPANY,** | ) | |
| | ) | |
| Defendant. | ) | |

**WELLS FARGO BANK, N.A.'S MOTION FOR SUMMARY JUDGMENT**

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, Wells Fargo Bank, N.A. ("Wells Fargo") respectfully moves this Court for an order of summary judgment that Allstate Insurance Company's ("Allstate") homeowner's insurance policy for the property located at 7376 Yellow Creek Drive in Poland, Ohio covers the arson that damaged the home thereon. The reasons in support of this Motion are fully set forth in the accompanying memorandum.

Respectfully submitted,

/s/ Philip B. Sineneng
Philip B. Sineneng          (0083406)
*Trial Attorney*
Anthony C. White            (0062146)
THOMPSON HINE LLP
41 South High Street, Suite 1700
Columbus, Ohio  43215-6101
Tel:    (614) 469-3200
Fax:    (614) 469-3361
Philip.Sineneng@ThompsonHine.com
Tony.White@ThompsonHine.com

*Attorneys for Plaintiff Wells Fargo Bank, N.A.,*

1

**MEMORANDUM IN SUPPORT**

**I.      INTRODUCTION**

Allstate impermissibly expanded the scope of a "vandalism and malicious mischief" exclusion to deny Wells Fargo's claim for arson damage under a specific homeowner's insurance policy that expressly provides coverage for "fire."  Although no Ohio court has addressed this particular issue in any insurance contract, this Court need not fashion new law or define "arson" for the ages.  Instead, existing Ohio principles of contract interpretation—in conjunction with well-established Ohio policies favoring insurance coverage—dictate that under the relevant policy, "arson" should be a covered "fire," and not an excluded act of "vandalism or malicious mischief."

**II.     STATEMENT OF UNDISPUTED FACTS**

   **A.      The Insurance Claim**

Wells Fargo is the insured mortgagee under Allstate Property and Casualty Insurance Company Homeowners Policy No. 9 80 584930  09/20 (the "Policy") executed with Antoniano Delsignore for a single-family home located at 7376 Yellow Creek Drive in Poland, Ohio (the "Property").  *See* Joint Stipulation of Fact dated October 24, 2016, Docket No. 35 ("Stipulation") at ¶¶ 1-2, Ex. A.  Mr. Delsignore defaulted on his mortgage payments in 2013, and by the end of that year, had vacated the Property.  *Id.* at ¶ 3.  On February 6, 2014, a fire damaged the Property and an independent third-party later determined that an unknown arsonist caused the fire.  *Id.* at ¶ 4.  Wells Fargo timely filed an insurance claim with Allstate for the fire damage, which Allstate denied on the grounds that arson fell within the insurance policy's exclusion for "Vandalism or Malicious Mischief," despite the policy's express coverage of damage caused by "Fire."  *Id.* at ¶¶ 6-8.

**B.     The Insurance Policy**

The Policy provides coverage in three parts: (a) dwelling protection, (b) other structures protection, and (c) personal property protection. *See id.* at Ex. A (Docket 35-1), PageID #: 218-19.  Wells Fargo seeks to enforce Allstate's coverage for dwelling protection.

**C.     The Policy Excludes "Vandalism or Malicious Mischief" From Dwelling Protection  (Coverage A) Without Defining Those Terms.**

The Policy provides coverage for "sudden and accidental direct physical loss to property described in **Coverage A—Dwelling Protection** . . . except as limited or excluded in this policy." *Id.*, PageID #: 219 (emphasis in original). Without defining the terms "vandalism" or "malicious mischief," the Policy excludes the following from its dwelling protection:

> 6. Vandalism or Malicious Mischief if **your dwelling** is vacant or unoccupied for more than 30 consecutive days immediately prior to the vandalism or malicious mischief. A **dwelling** under construction is not considered vacant or unoccupied.

*Id.*, PageID #: 226.

**D.     The Policy Excludes "Vandalism and Malicious Mischief" From Personal Property Protection (Coverage C) Without Defining Those Terms.**

The Policy also leaves the terms "vandalism" and "malicious mischief" undefined with respect to its coverage for personal property, and describes the exclusion in the same manner as the "Vandalism or Malicious Mischief" exclusion for dwelling protection. With respect to losses to personal property, the Policy states, in relevant part:

> **Losses We Cover Under Coverage C:**
> **We** will cover sudden and accidental direct physical loss to the property described in **Coverage C— Personal Property Protection**, except as limited or excluded in this policy, caused by:
> 1. Fire or Lightning.
>    . . .

> 4. Riot or Civil Commotion, including pillage and looting during, and at the site of, the riot or civil commotion.
>
>    . . .
>
> 8. Vandalism and Malicious Mischief.
>
>    **We** do not cover vandalism or malicious mischief if **your dwelling** has been vacant or unoccupied for more than 30 consecutive days immediately prior to the vandalism or malicious mischief. A **dwelling** under construction is not considered vacant or unoccupied.
>
>    . . .
>
> 15. Theft, or attempted theft, including disappearance of property from a known place when it is likely that a theft has occurred. Any theft must be promptly reported to the police.
>
>     . . .
>
> 16. Breakage of glass, meaning damage to covered personal property caused by breakage of glass constituting a part of any **building structure** on the **residence premises**. This does not include damage to the glass.

*Id.*, PageID #: 220-21. Notably, "Fire" is listed separately from "Vandalism and Malicious Mischief" as a covered loss.

    **E.**    **The Policy's Only Mention Of "Arson" Is In Connection With A "Fire Loss."**

The Policy further provides an "Arson Reward" for information leading to the conviction of an arsonist. Specifically, the Policy states:

> 10. **Arson Reward**
>     **We** will pay up to $5,000 for information leading to an arson conviction in connection with a fire loss to property covered under **Section I** of this policy. The $5,000 limit applies regardless of the number of persons providing information.

4

*Id.*, PageID #: 224. The Arson Reward applies whether the insured's <u>fire</u> loss is under either the Policy's coverage for dwelling protection (Coverage A) or personal property protection (Coverage C).

### III. <u>ARGUMENT</u>

#### A. Legal Standard

Summary judgment is appropriate when there "is no genuine issue as to any material fact." *Parker Hannifin Corp. v. Steadfast Ins.*, 445 F. Supp. 2d 827, 829 (N.D. Ohio 2006) (granting insured's motion for summary judgment while denying insurer's motion) (quoting Fed. R. Civ. P. 56); *Sherwin-Williams Co. v. Certain Underwriters at Lloyd's*, 813 F. Supp. 576, 581 (N.D. Ohio 1993) (same). Here, it is undisputed that the only mention of "arson" in the Policy is in connection with a "fire loss." It is further undisputed that, under the Policy, "fire" is a covered loss and a separate peril from "vandalism or malicious mischief," and that there are no exceptions to policy coverage for "fire." Therefore, there can be no genuine issue of material fact that the Policy covers the arson that damaged the Property.

#### B. Established Principles Of Ohio Contract Interpretation Dictate That The Policy Covers The Arson.

The meaning of an undefined term in an insurance policy is, as a matter of hornbook law, informed by its use throughout the <u>entire</u> policy. *See Whitt Mach., Inc. v. Essex Ins. Co.*, 377 Fed. Appx. 492, 496 (6th Cir. 2010) ("[T]he intention of the parties must be derived from the instrument as a whole, and not from detached or isolated parts thereof") (citation omitted); *City of Bryan v. Gulf Ins. Co.*, No. 99-cv-7504, 2001 U.S. Dist. LEXIS 3124, *5-6 (N.D. Ohio Jan. 17, 2001 ("In construing an insurance contract, a court must give affect [sic] to every phrase, taking into account the subject matter, nature and purpose of the agreement."). Courts look at the entire insurance policy to ensure words are given the same meaning throughout the contract.

*City of Toledo v. Beazer Materials & Servs.*, 912 F. Supp. 1051, 1058 (N.D. Ohio 1995) ("[W]hen the same words are used in different parts of a written contract the words should receive the same meaning."), *rev'd on other grounds*; 1996 U.S. App. LEXIS 30858 (6th Cir. Nov. 22, 1996); *see also Hall v. Kemper Ins. Cos.*, No. 02CA17, 2003-Ohio-5457, ¶ 66, 2003 Ohio App. LEXIS 4929, *25 (4th Dist. Sept. 30, 2003) (stating that the preferred interpretation of a term is to apply it consistently throughout an insurance policy); *De Uzhca v. Derham*, No. 19106, 2002-Ohio-1814, ¶ 28, 2002 Ohio App. LEXIS 1538, *11 (2d Dist. Apr. 5, 2002) ("We believe that a consistent interpretation of the word is preferable to ascribing it different meanings depending on where in the policy it appears.").

### 1. The Policy Describes "Arson" as a "Fire Loss."

Although the Policy does not list "arson" in any of its coverages, the Policy offers an "Arson Reward" for "information leading to an arson conviction in connection with a **fire** loss." Stipulation at Ex. A, PageID #: 224. Notably, Allstate does not offer an arson reward in connection with a "vandalism or malicious mischief" loss or describe "arson" in any other context. Thus, Allstate intended for and understood "arson" to be a "fire." There is no dispute that "fire" is a covered loss under the Policy's dwelling protection (Coverage A).

### 2. The Policy Distinguishes Between "Fire" and "Vandalism or Malicious Mischief."

In denying Wells Fargo's insurance claim, Allstate wrongly suggests that "arson" is an act of "vandalism or malicious mischief" under the Policy. Although "vandalism or malicious mischief" is undefined under the Policy's dwelling protection provision (Coverage A), its meaning can be determined from its use throughout the rest of the Policy. In addition to the dwelling protection provision (Coverage A), the Policy refers to "vandalism or malicious mischief" under its personal property provision (Coverage C). Without any express disclaimer

6

otherwise, "vandalism or malicious mischief" should have the same meaning across the two provisions.

Upon examining "vandalism or malicious mischief" under the personal property provision (Coverage C), it is readily apparent that the term refers to something other than "fire." The Policy lists "fire", "riot or civil commotion," "theft," "breakage of glass" and "vandalism and malicious mischief" as separate perils in its personal property provision (Coverage C). *Id.*, PageID #: 220-22. Ohio contract law is clear that different words indicate a drafter's intent for them to have separate meanings, and that courts should not interpret contracts to have superfluous provisions. *American Special Risk Ins. Co. v. A-Best Prods.*, 975 F. Supp. 1019, 1024 (N.D. Ohio 1997). As a matter of law, then, neither "fire," "riot or civil commotion," "theft," nor "breakage of glass" can mean the same thing as "vandalism and malicious mischief." Otherwise, the "vandalism and malicious mischief" provision would be superfluous.

To give meaning to the "vandalism and malicious mischief" provision, courts must construe it to mean something not already enumerated in the Policy, such as defacing property, graffiti, spray-painting, or ransacking. *See generally Maxus Capital Group, LLC v. Liberty Surplus Ins. Corp.*, No. 1:13-cv-01546, 2014 U.S. Dist. LEXIS 136564, *14-15 (N.D. Ohio Sept. 26, 2014) ("Maxus speculates that if 'demand' were so construed it would include governmental or administrative hearings, disciplinary actions, or arbitration. However, these examples are already contemplated by the general term 'proceeding,' making Maxus's interpretation of 'demand' superfluous."). By distinguishing "fire" damage from "vandalism and malicious mischief" damage, Allstate must have intended for "vandalism and malicious mischief" <u>not</u> to include fire. Because "vandalism or malicious mischief" does not include fire under the personal

7

property provision (Coverage C) of the policy, it must not include fire under the dwelling protection provision (Coverage A) either.

> C. **Even If The Policy Were Somehow Ambiguous, Ohio Law Is Well-Established That Any Ambiguities In Insurance Policies Are Resolved In Favor Of The Insured.**

At best, Allstate might suggest that the Policy allows for "arson" to be both a "fire" and "vandalism or malicious mischief." If that is the case, the Policy is ambiguous as a matter of law. *See Oak Rubber Co v. Bank One, N.A.,* 214 F. Supp. 2d 820, 833 (N.D. Ohio 2002) ("A term is ambiguous if it is reasonably susceptible of more than one meaning."). Yet Ohio law is abundantly clear that courts should resolve the ambiguities in insurance policies in favor of the insured. *Whitt Mach.,* 377 Fed. Appx. at 496; s*ee also Rinehart v. Dillard*, No. 06AP-977, 2007-Ohio-4310, ¶ 56, 2007 Ohio App. LEXIS 3857, *28 (10th Dist. Aug. 23, 2007); *Knapp v. Nationwide Agribusiness Ins. Co.*, No. 20613, 2005-Ohio-3060, ¶ 18, 2005 Ohio App. LEXIS 2849, *6 (2d Dist. June 17, 2005). The Sixth Circuit has unequivocally stated:

> In general, "insurance policies are interpreted strictly against the insurer," and therefore, "in order to defeat coverage, 'the insurer must establish not merely that the policy is capable of the construction it favors, but rather that such an interpretation **is the only one** that can fairly be placed on the language in question.'"

*Whitt Mach.*, 377 Fed. Appx. at 496 (quoting *Andersen v. Highland House Co.*, 757 N.E.2d 329, 332-33 (Ohio 2001)) (emphasis added). Similarly, the Tenth District Court of Appeals has stated that when "the policy provisions at issue are reasonably susceptible of more than one interpretation, we must liberally construe these ambiguous provisions in favor of the insureds, and must strictly construe these provisions against the insurer, Allstate Insurance." *Rinehart*, 2007-Ohio-4310 at ¶ 56. That is because as the drafter of insurance policies, insurance companies control the ambiguity in a policy. *See generally id*, 2007-Ohio-4310 at ¶ 53.

The Tenth District's analysis in *Rinehart* is instructive. In that case, the insured was

8

riding a motorcycle that he modified for off-street racing when he struck and killed a pedestrian. The deceased's estate filed an insurance claim against Allstate. *Id.* at ¶¶ 5-8. The Allstate policy at issue did not cover injury or damage arising out of the "ownership, maintenance, use, occupancy, renting, loaning, entrusting, loading or unloading of any **motor vehicle**" except for "any **motor vehicle designed principally for recreational use off public roads**." *Id.* at ¶ 45 (emphasis added).

Allstate wrongfully denied coverage on the basis that a modified motorcycle did not fall within the policy's coverage. *Id.* at ¶ 49. Allstate suggested that coverage only extended to motor vehicles "originally" manufactured for recreational use or for motor vehicles that were designed principally "by a manufacturer" for recreational use. *Id.* at ¶ 53. The court disagreed, stating that "[i]f Allstate Insurance intended such limitations, it presumably could have drafted the policies to reflect such restrictions. Since it did not, we find that the express language of the policies does not support such limitations." *Id.; see also United Capital Corp. v. Travelers Indem. Co.*, 237 F. Supp. 2d 270, 276 (E.D.N.Y. 2002) ("As the drafter of the Policy, Defendant could have clearly excluded coverage for the fire at issue by defining 'Vandalism' in the Policy to include arson, or conversely, to define 'Fire' as accidental fires only.")

In the present matter, had Allstate intended to exclude arson from coverage, it should have drafted the Policy to reflect such a restriction. If Allstate was required to specify whether a "motor vehicle designed principally for recreational use" meant only those motor vehicles designed by manufacturers for recreational use—and not those altered by their owners for recreational use—then it stands to reason that Allstate should similarly be required to specify whether "arson" is an excluded form of "vandalism or malicious mischief." Moreover, exclusions in an insurance policy should be interpreted *narrowly* and only apply to that which is

9

*clearly intended* to be excluded.  As this Court has noted:

> The law in Ohio regarding exclusions in insurance contracts is well-settled.  The insurer, being the one who selects the language in the contract, must be specific in its use; and exclusion from liability must be clear and exact in order to be given effect.  Thus, when exclusions are introduced into an insurance contract, that which is not clearly excluded is included.  Any reasonable interpretation of the policy resulting in coverage of the insured must be adopted by the trial court in Ohio.

*Reliance Ins. Co. v. Keybank U.S.A.*, No. 1:01-cv-62, 2006 U.S. Dist. LEXIS 70823, *9 (N.D. Ohio Sept. 29, 2006) (citations omitted).  Thus, under principles of Ohio contract law, the inescapable conclusion is that the Policy provides dwelling coverage for arson.

### D.  The Law Across The Sixth Circuit And Surrounding Jurisdictions Decidedly Favors Insurance Coverage For Arson Losses.

The majority rule across the country is that "arson" falls within the dwelling protection coverage for fire losses.  The law of the other states within the U.S. Court of Appeals for the Sixth Circuit follows this majority rule.  *See R&J Dev. Co., LLC v. Travelers Prop.*, No. 11-47, 2012 U.S. Dist. LEXIS 64102, at *6-7 (E.D. Ky. May 7, 2012) (finding no general insurance industry practice to treat "arson" as "vandalism" unless insurers expressly exclude arson damage to vacant property); *Bates v. Hartford Ins. Co.*, 787 F. Supp. 2d 657, 662-63 (E.D. Mich. 2011) ("Although Hartford could have included a *vacancy* provision with respect to fire losses in the policy, it did not do so.  Hartford is not permitted to transform an exclusion from its *vandalism* coverage into an exclusion from its *fire* coverage."; finding that "arson" does not fall within the "vandalism and malicious mischief" provision) (emphasis in original); *Southern Trust Ins. Co. v. Phillips*, No. E2014-01581, 2015 Tenn. App. LEXIS 457 at *26 (Tenn. App. June 10, 2015) (finding that the "all-risk" dwelling coverage provision of an insurance policy "unambiguously provides coverage for fire and/or arson but does not cover vandalism or malicious mischief at a vacant dwelling").  Pennsylvania law is the same.  *Nationwide Mut. Fire Ins. Co. v. Nationwide Furniture*, 932 F. Supp. 655, 657 (E.D. Pa. 1996) ("[W]e interpret the policy to provide coverage

when fire damages a vacant building even though vandals may have set the blaze. If Nationwide Insurance had wished the result to be otherwise, it could easily have defined vandalism to include non-accidental fires.").

### E. As A Matter Of Public Policy, "Arson" Should Be Distinguished From "Vandalism or Malicious Mischief" To Be Consistent With Ohio Statutory Law.

Finally, Ohio's Revised Code already treats "arson," "vandalism" and "mischief" as separate and distinct acts. *See* Ohio Rev. Code 2909.03 (Arson), 2909.05 (Vandalism), 2909.07 (Criminal Mischief). Thus, Ohio residents are already subject to laws differentiating between "arson" and "vandalism and malicious mischief." Arguably, then, the plain and ordinary meaning of "arson" to an Ohio resident is that it is a separate act from "vandalism." As a matter of public policy, Ohio's common law should be consistent with its statutory law by not confusing or disrupting the common, natural understanding of "arson" and "vandalism." *See Southern Trust*, 2015 Tenn. App. LEXIS 457, at *21 and n.4 (recognizing that criminal statutes provide the context for the common and ordinary meaning ascribed to terms in their everyday use).

## IV. CONCLUSION

For the foregoing reasons, Wells Fargo Bank, N.A. respectfully requests that this Court find, as a matter of law, that arson is a covered loss under the Policy.

                Respectfully submitted,

                /s/ Philip B. Sineneng
Philip B. Sineneng        (0083406)
    *Trial Attorney*
Anthony C. White        (0062146)
THOMPSON HINE LLP
41 S. High Street, Suite 1700
Columbus, OH  43215
Tel:  (614) 469-3200
Fax:  (614) 469-3361
Philip.Sineneng@ThompsonHine.com
Tony.White@ThompsonHine.com

*Counsel for Plaintiff-Respondent*
*Wells Fargo Bank, N.A.*

### CERTIFICATION PURSUANT TO LOCAL RULE 7.1

I hereby certify that the foregoing *Wells Fargo Bank, N.A.'s Motion for Summary Judgment* is filed in connection with a case proceeding on the Standard Track.

/s/ Philip B. Sineneng
Philip B. Sineneng

### CERTIFICATION OF COMPLIANCE WITH
### THE COURT'S OCTOBER 4, 2016 ORDER

I hereby certify that, in compliance with the Court's Order dated October 4, 2016 (Docket No. 34), I sent a written request to opposing counsel asking Allstate Insurance Company to confess judgment to avoid filing the foregoing *Wells Fargo Bank, N.A.'s Motion for Summary Judgment*.   Allstate would not concede judgment against it.

/s/ Philip B. Sineneng
Philip B. Sineneng

### CERTIFICATE OF SERVICE

I hereby certify that on October 24, 2016, I caused a true and copy of the foregoing *Wells Fargo Bank, N.A.'s Motion for Summary Judgment* to be filed with the Clerk of Court using the CM/ECF system which will provide notice to counsel of record:

> Margo S. Meola
> Bonezzi, Switzer, Polito & Hupp Co., LPA
> 4137 Boardman-Canfield Road, Suite 101
> Canfield, OH  44406
> Tel:  (330) 286-3701
> Fax:  (330) 286-3745
> mmeola@bsphlaw.com
>
> *Attorneys for Defendant Allstate Insurance Company*

/s/ Philip B. Sineneng
Philip B. Sineneng

834418.1